UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

KONSTANTINOS STEFANIDIS,
            Plaintiff,

            v.                                        CASE NO. 3:14-cv-971 (VAB)

JOS. A. BANK CLOTHIERS, INC.,
            Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Konstantinos Stefanidis, has sued his former employer, Jos. A. Bank

Clothiers, Inc. ("Jos. A. Bank").  Compl., ECF No. 1-2.  Mr. Stefanidis alleges that he has

a disability, namely chronic tonsillitis, and that Jos. A. Bank harassed and discriminated

against him as a result.  *Id.* ¶¶4-5.  He makes disability discrimination claims under the

Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §46a-60, and

the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*.  *See* Compl. at

First Count, ECF No. 1-2.  He also alleges that Jos. A. Bank negligently and/or

intentionally inflicted emotional distress.  *Id.* at Second and Third Counts.

Jos. A. Bank has filed a motion for summary judgment, seeking to dismiss all of

Mr. Stefanidis's claims.  Mot. for Summ. J., ECF No. 37.  For the reasons that follow, the

motion is **GRANTED** in its entirety.

### I.      STATEMENT OF FACTS

Jos. A. Bank is a menswear retail company that hired Mr. Stefanidis in mid-2005.

Def.'s Local Rule 56(a)1 Stmt. ¶¶1, 4, 10, ECF No. 37-2; Pl.'s Ex. A, Stefanidis Aff. ¶3,

ECF No. 45.[1]  Mr. Stefanidis began working at Jos. A. Bank as a retail sales associate in

---

[1] In applying for this job with Jos. A. Bank, Mr. Stefanidis misrepresented on both his application and
resume that he had a bachelor's degree from the University of Connecticut.  Def.'s Local Rule 56(a)1 Stmt.

Westport, Connecticut.  Pl.'s Ex. A, Stefanidis Aff. ¶6, ECF No. 45.  Jos. A. Bank subsequently promoted him to key holder, assistant manager in 2008, and store manager in 2009.  *Id.; see also* Def.'s Local Rule 56(a)1 Stmt. ¶¶16, 18, ECF No. 37-2.   In 2010, he was transferred to the Fairfield, Connecticut store as the store's manager, where the events that form the basis for this case occurred.  Pl.'s Ex. A, Stefanidis Aff. ¶6, ECF No. 45.

Mr. Stefanidis suffered from "chronic tonsillitis" for a number of years before he was hired and while he worked for Jos. A. Bank.  *Id.* ¶7.  He testified that the tonsillitis reduced his stamina, gave him earaches and fever, made him more susceptible to getting sick, and impaired his abilities to speak and swallow.  *Id.* ¶¶7-8; Def.'s Ex. D, Stefanidis Dep. 28:8-16, 29:20-30:10, ECF No. 37-6.  He also indicated that, before they were removed, his tonsils were very large and that he had difficulty swallowing and had sleep apnea.  Def.'s Ex. D, Stefanidis Dep. 29:1-6, ECF No. 37-6.  Mr. Stefanidis contends that he missed work often for his condition and that he informed his supervisor, Joan Callanan, of his condition generally and when it caused him to miss work.  Pl.'s Ex. A, Stefanidis Aff. ¶8, ECF No. 45.

In November 2011, December 2011, and March 2012, Mr. Stefanidis had three appointments with a doctor at Soundview Medical Associates at which he complained of sore throat.  Def.'s Local Rule 56(a)1 Stmt. ¶¶24-27, ECF No. 37-2.  The doctor's notes from the March 2012 visit indicate that Mr. Stefanidis was considering a tonsillectomy. *Id.* ¶¶28-29.  He also noted that Mr. Stefanidis had "chronic pharyngitis."  *Id.* ¶29.

---

¶¶5, 8, ECF No. 37-2.  Mr. Stefanidis does not dispute that he misrepresented his educational background, but contends that he was hired because of his retail sales experience, not because of his then-alleged educational achievements.  Pl.'s Local Rule 56(a)1 Stmt. ¶¶7, 9, ECF No. 48; Pl's Ex. A, Stefanidis Aff. ¶5, ECF No. 45.

On April 3, 2012, Mr. Stefanidis saw Dr. Robert Weiss, an ear, nose and throat specialist. *Id.* ¶30. During this visit, he scheduled a tonsillectomy for May 9, 2012. *Id.* Mr. Stefanidis informed Ms. Callanan about the surgery the month before it occurred and indicated to her that he would return to work in early June. *See* Def.'s Ex. M, Callanan Dep. 30:12-31:16, ECF No. 37-15; Pl.'s Ex. A, Stefanidis Aff. ¶¶11, 13, ECF No. 45; *see also* Pl.'s Ex. G, E-mail dated June 4, 2012, ECF No. 47 (indicating that Mr. Stefanidis had initially intended to return to work in June). He claims that she was upset that he was taking leave and questioned him about who would operate the store in his absence. Pl.'s Ex. A, Stefanidis Aff. ¶¶13-14, ECF No. 45.

Mr. Stefanidis also sought leave under the Family Medical Leave Act ("FMLA") for the surgery and recovery time, which Jos. A. Bank approved through May 23, 2012. Def.'s Ex. D, Stefanidis Dep. 59:1-10, ECF No. 37-6; Def.'s Local Rule 56(a)1 Stmt. ¶50, ECF No. 37-2; Def.'s Ex. X, Memo regarding FMLA Leave, ECF No. 37-26. Consistent with Ms. Callanan's instructions, Mr. Stefanidis also obtained a note from Dr. Weiss supporting his claim for leave. Pl.'s Ex. A, Stefanidis Aff. ¶12, ECF No. 45; *see also* Pl.'s Ex. D, Letter dated Apr. 19, 2012, ECF No. 47. The letter indicated the date of the procedure and that Mr. Stefanidis would not be able to return to work "until he is considered medically cleared." *Id.*[2]

Mr. Stefanidis underwent a tonsillectomy on May 9, as scheduled. Def.'s Local Rule 56(a)1 Stmt. ¶39, ECF No. 37-2. He returned to work on May 23, 2012 at the end of his FMLA leave. *Id.* ¶50. After some post-operative visits during May 2012, Mr.

---

[2] In seeking the note, Mr. Stefanidis asked Dr. Weiss to indicate that he could not return to work for thirty days. Def.'s Local Rule 56(a)2 Stmt. ¶31, ECF No. 37-2. However, Dr. Weiss testified that typically patients recovered from a tonsillectomy in fourteen days. Def.'s Ex. V, Weiss Dep. 53:154:4, ECF No. 37-24.

Stefanidis did not see a physician for at least a year and half about this tonsillitis. *Id.* ¶¶41-43, 47; Pl.'s Local Rule 56(a)2 Stmt. ¶47, ECF No. 48. However, he contends that he still suffers symptoms from his tonsillitis including throat pain, fatigue, and dry throat. Pl.'s Local Rule 56(a)2 Stmt. ¶47, ECF No. 48; Pl.'s Ex. A, Stefanidis Aff. ¶18, ECF No. 45.

Jos. A. Bank contends that Mr. Stefanidis returned to work without any restrictions and that he did not inform anyone at Jos. A. Bank that he had a permanent condition or needed accommodation. Def.'s Local Rule 56(a)1 Stmt. ¶¶50-53, ECF No. 37-2. Mr. Stefanidis indicates that he had not yet recovered from the surgery when he returned to work, that he continued to suffer from symptoms of tonsillitis, mentioned above, and that he could not lift heavy objects. Pl.'s Ex. A, Stefanidis Aff. ¶18, ECF No. 45. Mr. Stefanidis also claims that Ms. Callanan called him at home during his FMLA leave and told him that sales figures were down. *Id.* ¶16. He contends that, as a result of Ms. Callanan's calls, he returned to work before he was ready and that, upon his return, he found the store to be well-maintained and the sales figures to be at a normal level. *Id.* ¶¶16-17; *see also* Pl.'s Ex. G, E-mail dated June 4, 2012, ECF No. 47 (indicating that Mr. Stefanidis had initially intended to return to work in June but had come back early).

Mr. Stefanidis admits that he did not request additional time away from work. Def.'s Ex. D, Stefanidis Dep. 69:1-6, ECF No. 37-6. He testified that he told Anthony Macaluso, the new store manager, that he was dizzy, had a sore throat, and was not operating at "a hundred percent." *Id.* at 63:5-13. There is no record evidence, however, that Mr. Stefanidis formally sought an accommodation for his condition.

In 2009, 2010 and 2011, Mr. Stefanidis was counseled for various performance issues, including a failure to secure the store's bank deposit, failing to achieve acceptable audit results, and failing to provide customer service to a particular customer.  *See* Def.'s Local Rule 56(a)1 Stmt. ¶¶19-21, 23, ECF No. 37-2; Pl.'s Local Rule 56(a)2 Stmt. ¶¶19-21, 23, ECF No. 48.  Mr. Stefanidis contends that a bad economy caused his poor sales numbers but does not otherwise deny that these performances issues occurred.  Pl.'s Local Rule 56(a)2 Stmt. ¶21, ECF No. 48.

Two additional incidents also occurred which resulted in his demotion and termination, respectively.  First, while he was out for his tonsillectomy an anonymous employee in the Fairfield store called the Jos. A. Bank's whistle-blower hotline and indicated that Mr. Stefanidis was improperly charging business-related shipping costs to the company's Westport store, in a plot to get back at the Westport store manager.  Def.'s Local Rule 56(a)1 Stmt. ¶48, ECF No. 37-2.[3]  Shipping expenses are deducted from each store's profits.  *Id.* ¶58.  Thus, charging shipping costs to another store would negatively impact that store's profitability.  *Id.*

When Mr. Stefanidis returned to work after his tonsillectomy, Michael Staines, a Regional Loss Prevention Manager, spoke to him about the anonymous complaint.  *Id.* ¶54.  Mr. Stefanidis signed a statement admitting he had improperly used the shipping codes.  *See* Def.'s Ex. JJ, Pl.'s Stmt., ECF No. 37-38.  But now, in the context of this litigation, he denies "intentionally" misusing the shipping codes and argues that other employees had access to the shipping codes.  *See* Pl.'s Ex. A, Stefanidis Aff. ¶¶20-21,

---

[3] Mr. Stefanidis purports to contest this fact but does not cite to any record evidence to support his objection, as required under this District's Local Rule 56(a)3.  Pl.'s Local Rule 56(a)2 Stmt.  ¶48, ECF No. 48; D. Conn. L. Civ. R. 56(a)3.  The Local Rule notes that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)1."  D. Conn. L. Civ. R. 56(a)3.

ECF No. 45. Jos. A. Bank demoted Mr. Stefanidis as a result of this incident and placed

him on "final written warning." Def.'s Local Rule 56(a)1 Stmt. ¶59, ECF No. 37-2.

Second, Jos. A. Bank claims that Mr. Stefanidis and an assistant manager, who

was senior to him at the time, improperly closed the Fairfield store on the evening of

August 9, 2012. The company's policies require employees to lock the doors of stores at

the scheduled closing time and complete daily closing procedures, including counting

cash in the registers and preparing daily bank deposits, after the store is closed. Def.'s

Local Rule 56(a)1 Stmt. ¶61, ECF No. 37-2.[4]

On the day in question, the store's alarm was armed at 9:02 p.m., indicating in

Jos. A. Bank's view, that either Mr. Stefanidis began closing procedures before the

scheduled 9 p.m. closing time or that he did not complete the required procedures. *Id.*

¶¶61-67. Mr. Stefanidis contends that the clock on the alarm did not work properly, but

does not directly deny closing the store improperly. Pl.'s Ex. A, Stefanidis Aff. ¶¶24-27,

ECF No. 45. He also contends that, even if the closing procedures were not properly

completed that night, he was "not responsible" for the closing and was following

instructions from the assistant manager, who was senior to him at the time. *Id.*

Jos. A. Banks terminated Mr. Stefanidis on August 16, 2012, because it believed

that Mr. Stefanidis had improperly closed the store while he was on "final written

warning." Def.'s Local Rule 56(a)1 Stmt. ¶¶68, 70, ECF No. 37-2. Mr. Stefanidis

contends that he was discharged because of his chronic tonsillitis. Pl.'s Local Rule

56(a)2 Stmt. ¶70, ECF No. 48. It is undisputed that the assistant manager who also was

responsible for closing the store that same evening was not terminated as a result of the

---

[4] Mr. Stefanidis contends that store closing procedures do not always occur after the store's doors are
locked, but he does not cite to any record evidence to support his objection, as required under this District's
Local Rule 56(a)3. Pl.'s Local Rule 56(a)2 Stmt. ¶61, ECF No. 48; D. Conn. L. Civ. R. 56(a)3.

incident.  Def.'s Local Rule 56(a)1 Stmt. ¶74, ECF No. 37-2.  Jos. A. Bank indicates that this assistant manager had no prior disciplinary incidents and therefore, was subject to more limited disciplinary action.  *Id.* ¶75.

## II.    STANDARD

The Court shall grant summary judgment, if there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party carries the burden of demonstrating that there is no genuine material dispute of fact by citing to "particular parts of materials in the record."  *See* Fed. R. Civ. P. 56(c)(1)(A)-(B); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).  A dispute regarding a fact is "'genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and material if the substantive law governing the case identifies those facts as material.  *Williams v. Utica Coll. Of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir. 1998)); *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In assessing a summary judgment motion, the Court must resolve all ambiguities and draw all inferences from the record as a whole in favor of the non-moving party.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted).

### III.    DISCUSSION

Mr. Stefanidis claims that Jos. A. Bank discriminated against him on the basis of his alleged disability, tonsillitis, in violation of the ADA and CFEPA when it demoted and terminated him.  Compl. at First Count, ECF No. 1-2.  He also contends that he was subjected to a hostile work environment, in violation of the same statutes, and appears to also suggest that Jos. A. Bank failed to reasonably accommodate his disability.  *Id.* Finally, he claims that Jos. A. Bank negligently and/or intentionally inflicted emotional distress on him.  *Id.* at Counts Two and Three.  Jos. A. Bank has moved to summarily dismiss all of these claims.  Mot. for Summ. J., ECF No. 37.

#### A.   Retaliation

In opposing summary judgment, Mr. Stefanidis discusses a retaliation claim.  Pl.'s Opp. Br. 15, ECF No. 44.  The Court finds nothing in his Complaint indicating that he brought such a claim.  A complaint must set forth all of the claims in a lawsuit.  *See* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff cannot assert new claims for the first time in opposing summary judgment.  *See Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion."); *Davis v. Connecticut Community Bank*, 937 F. Supp. 2d 217, 238 (D. Conn. 2013) (same); *see also Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (affirming a district court's decision not to analyze a claim raised for the first time in opposing summary judgment).

Mr. Stefanidis's Complaint does not contain any allegations that could constitute a retaliation claim.  He cannot now add one at summary judgment.  *See id.*

### B. Disability Discrimination (First Count)

The ADA and CFEPA prohibit an employer from discriminating against its employees on the basis of their disabilities. *See* 42 U.S.C. §12112(a); Conn. Gen. Stat. §46a-60(a)(1). Mr. Stefanidis claims that Jos. A. Bank discriminated against him because he has chronic tonsillitis, which he claims to be a disability, when it demoted and terminated him. Jos. A. Bank argues that Mr. Stefanidis's claim fails, because he is not disabled under the ADA or CFEPA. Def.'s Br. 6-18, ECF No. 37-1. It also argues that it had legitimate, non-discriminatory reasons for demoting and terminating Mr. Stefanidis, and that its reasons were not pretext. *Id.* at 18-24.

In analyzing a discrimination claim under the ADA, the Court applies the *McDonnell Douglas* burden-shifting framework. *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Prog., Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)); *McBride v. BIC Consumer Prods. Mfg., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (citation omitted). Under this framework, Mr. Stefanidis must first introduce evidence raising a genuine question of material fact on a *prima facie* case of discrimination. *See Heyman*, 198 F.3d at 72 (citation omitted). To make out a *prima facie* case, Mr. Stefanidis must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment because of his disability." *Id.* (citation omitted). If the evidence demonstrates a dispute of material fact on each element of the *prima facie* case, Jos. A. Bank must then offer a non-discriminatory reason for terminating him. *Id.* Its burden is satisfied if the reason, if

9

believed, "would support a finding that unlawful discrimination was not a cause of the disputed employment action." *Id.*

If Jos. A. Bank meets this burden, to survive summary judgment, Mr. Stefanidis then must introduce evidence that the offered reason was a pretext for discrimination. *See id.* To show pretext, he must introduce evidence from which a reasonable juror could conclude that Jos. A. Bank's real motivation was discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (under Title VII) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981)); *Bickerstaff v. Vassar Coll.* 196 F.3d 435, 446-47 (2d Cir. 1999) (under Title VII); *see also e.g.*, *Greene v. Enlarged City Sch. Dist. of Middletown, N.Y.*, 606 F. App'x 624, 626 (2d Cir. 2015) (applying the same standard to the analysis of pretext under the ADA); *Wesley-Dickson, Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 741-44 (2d Cir. 2014) (same). He may offer evidence that the legitimate reason offered to justify the employment decision is false, "as one means to support her ultimate burden of proving discrimination," but such evidence is not required to show pretext. *Bickerstaff*, 196 F.3d at 447.

Other than CFEPA's broader definition of disability, Connecticut courts have interpreted disability discrimination claims brought under CFEPA to be similar to those brought under the ADA. *See Hopkins v. New Eng. Health Care Employees Welfare Fund*, 985 F. Supp. 2d 240, 255-56 (D. Conn. 2013). Because the Court need not address the definition of disability to dispose of this case, it will treat the analysis of Mr. Stefanidis's claims under ADA and CFEPA as the same.

Assuming, without deciding, that Mr. Stefanidis has demonstrated genuine questions of material fact on all elements of his *prima facie* case, the Court finds that his

case cannot survive summary judgment. Jos. A. Bank has provided legitimate non-discriminatory reasons for both his demotion and termination, and Mr. Stefanidis has failed to identify any record evidence showing those reasons were pretext for disability discrimination. Accordingly, summary judgment must be granted.

### 1. Demotion

Jos. A. Bank argues that it demoted Mr. Stefanidis because it believed he had violated company policy by improperly using shipping codes for another store. Def.'s Br. 19-21, ECF No. 37-1. Mr. Stefanidis signed a written confession that he had improperly used the codes. Def.'s Ex. JJ, Pl.'s Stmt., ECF No. 37-38. Violations of company policy are legitimate non-discriminatory reasons to discipline employees. *See e.g.*, *Pacenza v. IBM Corp.*, No. 04 Civ. 5831(PGG), 2009 WL 890060, at *12-13 (S.D.N.Y. Apr. 2, 2009) (finding that an employer's claim that the plaintiff violated its standards of conduct was a legitimate reason for termination and collecting cases with the same outcome). Because Jos. A. Bank has provided a legitimate, non-discriminatory reason for his demotion, to survive summary judgment, Mr. Stefanidis must show that this reason was pretext. He fails to do so.

Mr. Stefanidis argues that Jos. A. Bank's reason is pretext because he now claims that he did not "intentionally" misuse the codes and other employees had access to shipping codes, implying that another employee misused the codes. Pl.'s Opp. Br. 31-32, ECF No. 44. He also contends that the demotion occurred one week after his return from his tonsillectomy, raising an inference of a causal link between his tonsillitis and the demotion. *Id.* at 14-15, 32. Finally, he argues that his supervisor, Ms. Callanan expressed frustration with him when he told her about his surgery and called him while

he was out on leave to discuss falling sales numbers and other aspects of the store's management.  *Id.* at 30-31.

This evidence is insufficient to show pretext, because it does not raise any inference that Jos. A. Bank's decision to demote Mr. Stefanidis was motivated by discrimination.  As a preliminary matter, "[t]emporal proximity may be sufficient to show a prima facie case, but is insufficient to demonstrate pretext" without other evidence of discriminatory intent.  *Trent v. Town of Brookhaven*, 966 F. Supp. 2d 196, 206-07 (E.D.N.Y. 2013) (collecting cases); *see Bickerstaff*, 196 F.3d at 446-47 (noting that in evaluating pretext, the plaintiff has the "ultimate burden to persuade the trier of fact that she has been the victim of intentional discrimination (i.e., that an illegal discriminatory reason played a motivating role in the adverse employment decision)"), *see also El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (holding in the context of a retaliation claim that "temporal proximity," without more, cannot satisfy plaintiff's burden on pretext).

Second, none of the other evidence Mr. Stefanidis has identified raises an inference that discriminatory intent played any role in his demotion.  His discussions with Ms. Callanan did not relate to his ability to do his job upon his return or his alleged disability.  He also presents no evidence that his discussions with Ms. Callanan while he was recovering from his surgery led to his demotion.

The fact that Mr. Stefanidis now denies using the shipping codes improperly also does not show pretext.  The purpose of the pretext inquiry is not to determine whether an adverse employment action was fair or wise, but rather to determine whether discrimination was a motivating factor behind such a decision.  *See Anderson v. Nat'l*

*Grid, PLC*, 93 F. Supp. 3d 120, 145 (E.D.N.Y 2015) (collecting cases); *McPherson v. New York City Dep't of Ed.*, 457 F.3d 211, 216 (2d Cir. 2006) (noting that in evaluating pretext, the Court is "not interested in the truth of the allegations against plaintiff [but rather] in what *motivated* the employer.") (emphasis in original and internal quotation marks and citation omitted) (in the context of evaluating an ADEA claim); *see also DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993) (A "fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable [but should instead] determin[e] whether the articulated purpose is the actual purpose for the challenged employment-related action.") (citation omitted); *Roge v. NYP Hldgs., Inc.*, 257 F.3d 164, 169 (2d Cir. 2001) ("[I]t is common sense and entirely lawful for an employer to select for termination an employee who the employer in good faith believes recently engaged in fraud relating to the employment. Whether or not fraud actually occurred… [such] circumstances… provide a nondiscriminatory reason for choosing to terminate that employee..."); *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) ("Where a plaintiff has been terminated for misconduct, the question is not 'whether the employer reached a correct conclusion in attributing fault [to the plaintiff]…, but whether the employer made a good-faith business determination.'") (alterations in original) (citation omitted).

Mr. Stefanidis presents no evidence that non-disabled employees who improperly used shipping codes were treated differently.  He fails to show that the allegations of misconduct were entirely baseless or otherwise an expression of discriminatory intent. He also provides no evidence that, prior to this lawsuit, he told anyone at Jos. A. Bank that he did not misuse the shipping codes.

Jos. A. Bank has demonstrated that it had a good faith belief that Mr. Stefanidis violated its company policy by improperly using shipping codes for another store. Without other evidence that Jos. A. Bank was motivated, at least in part, by discriminatory animus, Mr. Stefanidis has failed to create a genuine issue of material fact on pretext. *Anderson*, 93 F. Supp. 3d at 145 (dismissing plaintiff's argument that he did not "actually violate" his employer's standards of conduct because his arguments went "only to the accuracy or wisdom of the defendants' decision to terminate him" and failed to create a triable issue on whether defendants' reasons were pretext for discrimination); *Pacenza*, 2009 WL 890060, at *14 (holding that "to avoid a finding of pretext, an employer must merely have a good faith belief in the articulated reason for an employee's termination" and collecting cases); *Luckette v. F.M. Howell & Co., Inc.*, 942 F. Supp. 2d 374, 378 (W.D.N.Y. Apr. 29, 2013) (finding that plaintiff failed to show pretext where he did not produce evidence that his supervisor's interpretation of the plaintiff's conduct was, "even if incorrect, insincere, so frivolous as to be incredible, or motivated by discriminatory animus."). Because Mr. Stefanidis has failed to show that his demotion was motivated in any way by discrimination against him because of his chronic tonsillitis, his ADA claim based on his demotion must fail.

### 2. Termination

Jos. A. Bank indicates that it terminated Mr. Stefanidis for failing to comply with another company policy, by failing to properly close the store one evening. Def.'s Br. 21-22, ECF No. 37-1. Employees are required to complete closing procedures daily, once the store is closed. *See* Def.'s Ex. A, Callanan Decl. ¶¶11-12, ECF No. 37-3; Def.'s Ex. CC, Loss Prevention Policies and Procedures 4, ECF No. 37-31. On the evening in

14

question, the store's alarm was armed at 9:02 p.m. when the store was scheduled to close at 9 p.m.   Jos. A. Bank argues that this timing indicates either that Mr. Stefanidis did not properly complete closing procedures, which took more than two minutes, or that he closed the store to the public early.  Def.'s Br. 21, ECF No. 37-1.  For the same reasons discussed with respect to his demotion, this reason satisfies Jos. A. Bank's obligation of providing a legitimate non-discriminatory reason for Mr. Stefanidis's termination.  *See e.g.*, *Pacenza*, 2009 WL 890060, at *13.  Accordingly, to survive summary judgment, Mr. Stefanidis must produce evidence from which a reasonable juror could conclude Jos. A. Bank was truly motivated, at least in part, by discrimination.

Mr. Stefanidis argues that Jos. A. Bank's legitimate reason is pretext because it occurred less than sixty days after his tonsillectomy.  Pl.'s Opp. Br. 32, ECF No. 44.  As noted above, a temporal connection alone is insufficient in considering pretext.  *See Trent*, 966 F. Supp. 2d at 206-07; *Bickerstaff*, 196 F.3d at 446-47.

Mr. Stefanidis also argues that the clock on the store's alarm did not function properly and did not record time accurately.  Pl.'s Opp. Br. 33, ECF No. 44.  Thus, he reasons, there is insufficient evidence that he failed to perform the store closing procedures.  *Id.*  However, he does not directly deny that he failed to close the store properly.  Moreover, the only evidence Mr. Stefanidis cites in support of his conclusion that the alarm clock was inaccurate is his own conclusory testimony that "[t]he clock… was frequently slow and not accurate."  Pl.'s Ex. A, Stefanidis Aff. ¶27, ECF No. 45.  The Court finds that this conclusory, self-serving statement is insufficient to raise a genuine question on whether the clock was working properly.  *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990) (noting that under Rule 56(e), a district court

15

cannot deny summary judgment based on "conclusory allegations of the complaint or answer" placed into an affidavit); *see also Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."). Mr. Stefanidis could have conducted discovery on this issue to substantiate his claim but chose not to or found no evidence to support his contention. The Court is not required to assume such an unsupported allegation is true. *See Lujan*, 497 U.S. at 887-88.

However, even assuming that the clock was not working properly, this fact is not material because it does not show that Mr. Stefanidis's termination was pretext. As explained above, the relevant inquiry is whether a defendant's proffered reason was pretext for discrimination, not whether the adverse employment action was wise or based on facts that ultimately were true. *See e.g.*, *McPherson*, 457 F.3d at 216.

Finally, Mr. Stefanidis argues that he was treated differently from the assistant manager, who he claims was responsible for the improper closing and was not disabled. Pl.'s Opp. Br. 32-33, ECF No. 44. He contends that this assistant manager was merely given a verbal warning and subsequently promoted. *Id.* at 33. In other words, he argues that he was treated differently from a non-disabled, similarly situated employee and that this disparate treatment creates a genuine issue of material fact as to whether Jos. A. Bank's reason for terminating him was a pretext for discrimination.

A plaintiff may raise an inference of discrimination when the employer treats the plaintiff less favorably than an employee who is "similarly situated" "in all material respects" and "outside his protected group." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). For an employee to be "similarly situated," he "must have a situation

16

sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

The assistant manager's situation is not similar enough to Mr. Stefanidis's situation to sustain a disparate treatment claim. Mr. Stefanidis does not contest that the assistant manager did not have any other disciplinary infractions. He also admits he had a number of prior disciplinary incidents. Accordingly, whether she was treated differently from him is not probative of whether Jos. A. Bank was motivated by discrimination. *See generally Padilla v. Harris*, 285 F. Supp. 2d 263, 270-71 (D. Conn. 2003) (granting summary judgment in favor of the defendant because the possible comparator individual had a "fundamentally different" disciplinary record and noting that "[p]rior disciplinary problems may be sufficient to justify differential treatment of otherwise similarly situated employees"); *see also e.g.*, *D'Cunha v. New York Hosp. Med. Ctr. of Queens*, No. 02-CV-5445(DLI)(LB), 2006 WL 544470, at *7 (E.D.N.Y. Mar. 6, 2006) (finding that different performance records showed that plaintiff was not similarly situated with possible comparator and granting summary judgment in favor of the defendant).

Moreover, to the extent that Mr. Stefanidis tries to shift blame onto the assistant manager for improperly closing the store, such an argument cannot establish pretext. *See Taylor v. Polygram Records*, No. 94 CIV. 7689(CSH), 1999 WL 124456, at *10 (S.D.N.Y. 1999) ("faulting others for, or otherwise rationalizing, problems legitimately perceived by [plaintiff's] employer does not establish pretext…") (citing *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997)).

Accordingly, summary judgment must be granted on Mr. Stefanidis's discrimination claim based on his termination because no reasonable juror could conclude that Jos. A. Bank was truly motivated by discrimination and that its legitimate reason for his termination was pretext.

### C.   Hostile Work Environment (First Count)

Mr. Stefanidis claims that he was subject to a hostile work environment at Jos. A. Bank because of his disability, in violation of the ADA and CFEPA.  As with the discrimination claims discussed above, hostile work environment claims brought under the CFEPA and ADA are treated the same generally.  *See Martin v. Town of Westport*, 558 F. Supp. 2d 228, 242 (D. Conn. 2008) ("Connecticut courts look to federal law for guidance when analyzing CFEPA hostile work environment claims.").  Counsel has not identified any dispositive differences between the two statutes that apply to this case; thus, the Court will treat the claims under the ADA and CFEPA as the same.

Workplace harassment is legally "actionable when it creates a so-called hostile work environment which is 'so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [plaintiff's] employment were thereby altered.'" *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 16-17 (2d Cir. 2011) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).[5]  Jos. A. Bank argues that the Court should dismiss this claim because Mr. Stefanidis cannot show that he was subject to severe and pervasive harassment or that such harassment had a connection to

---

[5] The Second Circuit has not yet decided whether a hostile work environment claim exists under the ADA, but several circuit courts have recognized such a cause of action.  *Farina*, 458 F. App'x 13, 17 &n.2 (collecting cases); *accord Robinson v. Dibble*, 613 F. App'x 9, 12 n.2 (2d Cir. 2015). Courts allowing hostile work environment claims under the ADA apply the same standards that apply to Title VII.  *See e.g.*, *Dibble*, 613 F. App'x at 12-13; *accord Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 150 (D. Conn. 2008) (citation omitted). The Court need not decide whether such a claim exists, because if it does exist, summary judgment is appropriate here.

his alleged disability.  Def.'s Br. 26, ECF No. 37-1.  It also argues that it has shown that the *Faragher/Ellerth* defense applies.  *Id.* at 28-29.  Because the Court agrees that Mr. Stefanidis cannot show that he was subject to severe and pervasive harassment, summary judgment must be granted.

In determining whether an environment is hostile or abusive, the Court examines the totality of the circumstances.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.") (analyzing Title VII); *see also Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 150 (D. Conn. 2008) (applying the Title VII standard to ADA claims). Relevant considerations include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.* at 23.  The plaintiff must also show that the harassment he experienced was because of his disability.  *See Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subject to the hostility because of her membership in a protected class.").

Mr. Stefanidis contends that he was subjected to a hostile work environment because he was demoted upon his return to work after his tonsillectomy, asked to run two stores and to train a new manager, asked to move a shelf on one occasion, and asked to sign a document regarding his use of shipping codes by Mr. Staines when he was not operating at "a hundred percent".  Def.'s Ex. D, Stefanidis Dep. 69:14-71:12, ECF No. 37-6.  However, he admits that being asked to run two stores and train a new manager did not relate to his alleged disability.  *Id.* at 72:12-73:2.  Thus, the only possible conduct that

could establish a hostile work environment claim is his demotion, moving a shelf, and the document he signed regarding the shipping codes.  Such conduct falls far short of the kind that survives a summary judgment motion on a hostile work environment.  *See e.g.*, *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 179 (4th Cir. 2001) (affirming a jury's finding of a hostile work environment where plaintiff's supervisors exposed him to physical harm on numerous occasions and "constantly berated and harassed him" "in vulgar and profane language" and "encouraged other employees to ostracize disabled workers" and "prevent[ed] them from doing their assigned tasks by refusing to give them necessary materials"); *see also generally*, *Alfano*, 294 F.3d at 374 (noting that to sustain a hostile work environment claim, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'  Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness") (citations omitted).

The Court finds that no reasonable juror could conclude that Mr. Stefanidis was subject to a hostile work environment.  Accordingly, summary judgment must be granted.

### D.   Reasonable Accommodation Claim (First Count)

To the extent the Complaint raises a reasonable accommodation claim, that claim is also dismissed.  The ADA and CFEPA require an employer to make reasonable accommodations for employees who have a known disability.  *See* 42 U.S.C. §12112(b)(5)(A); *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 414 (2008).  An essential aspect of a reasonable accommodation claim under both statutes is showing that the employer had notice of the employee's disability and that the disability required accommodation.  *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)

20

("[A]n employer has a duty reasonably to accommodate an employee's disability [under the ADA]… if the employer knew or reasonably should have known that the employee was disabled."); *Payne v. PSC Indus. Outsourcing, Ltd. P'ship*, CIVIL ACTION NO. 3:13-CV-00355 (VLB), ___ F. Supp. 3d ___, 2015 WL 5797004, at *5 (D. Conn. Sept. 30, 2015) (noting that "Connecticut courts generally analyze ADA and CFEPA claims under the same standard" and analyzing a reasonable accommodation under both statutes in the same way) (citation omitted).

Generally, an employee has the responsibility of directly requesting an accommodation from his employer. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) ("[G]enerally, 'it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'") (quoting 29 .C.F.R. §1630.9); *Felix v. New York City Trans. Auth.*, 154 F. Supp. 2d 640, 657 (S.D.N.Y. 2001) ("Courts have… dismissed ADA claims where the plaintiff has failed to prove that she requested an accommodation.") (collecting cases). However, Mr. Stefanidis may also satisfy the notice requirement if he can show that his disability was known or obvious, such that Jos. A. Bank knew or reasonably should have known of his need for an accommodation. *See Brady*, 531 F.3d at 135-36 (affirming a jury instruction enabling a jury to conclude that, while an employee did not explicitly request an accommodation, plaintiff's cerebral palsy "manifested itself" in sufficiently obvious ways to place the employer on notice of his disability and sustain a reasonable accommodation claim).

Mr. Stefanidis introduces no evidence indicating that he told any of his supervisors that he was disabled or that he requested an accommodation for his tonsillitis that Jos. A. Bank denied. His doctor's note did not indicate he required an

accommodation.  Pl.'s Ex. D, Letter dated Apr. 19, 2012, ECF No. 47.  Although there is evidence that Mr. Stefanidis told his supervisor that he was not at "a hundred percent" and could not lift heavy items, he did not ask for an accommodation or otherwise indicate that he needed an accommodation for these issues in the long-term.

Moreover, there was nothing inherently obvious in his condition or the nature of the leave he took, for a tonsillectomy, indicating that he was disabled and required accommodation.  *See e.g.*, *MacEntee v. Int'l Bus. Machs.*, 783 F. Supp. 2d 434, 443-44 (S.D.N.Y. 2011) (holding in the motion to dismiss context that a plaintiff taking a "short-term leave" for depression did not put her employer on notice that she had a disability requiring accommodation).

In addition, to survive summary judgment on a reasonable accommodation claim, the plaintiff must show that some accommodation exists that would have allowed him to do his job with his disability.  *McBride*, 583 F.3d at 97 ("The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment…") (citation omitted). There is also no evidence in record of what Jos. A. Bank could have or should have done to accommodate Mr. Stefanidis's tonsillitis.  Thus, Mr. Stefanidis cannot show that an accommodation was possible.

For all of these reasons, to the extent that the Complaint makes out a reasonable accommodation claim, it is dismissed.

### E.   Intentional Infliction of Emotional Distress (Third Count)

Mr. Stefanidis claims that Jos. A. Bank intentionally inflicted emotional distress on him in the way it treated him.  Jos. A. Bank argues that summary judgment is

appropriate on this claim because its conduct was not sufficiently extreme or outrageous to sustain a claim of intentional infliction of emotional distress.  Def.'s Br. 30, ECF No. 37-1.  The Court agrees.

For Mr. Stefanidis to prevail on his intentional infliction of emotional distress claim, he must show that a genuine issue of material fact exists with respect to all of the following elements: (1) that Jos. A. Bank intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that Jos. A. Bank's conduct was the cause of Mr. Stefanidis's distress; and (4) that the emotional distress he sustained was "severe." *Appleton v. Bd. of Educ. of Stonington,* 254 Conn. 205, 210 (2000) (citation omitted); *Muniz v. Kravis,* 59 Conn. App. 704, 708-709 (Conn. App. Ct. 2000) (a plaintiff must prove all four elements to prevail on an intentional infliction of emotional distress claim) (citation omitted).

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine… Only where reasonable minds disagree does it become an issue for the jury."  *Carone v. Mascolo,* No. 3:06cv01094 (DJS), 2007 WL 2318818, at *3 (D. Conn. Aug.14, 2007) (quoting *Appleton,* 254 Conn. at 210) (alteration in original).  Extreme and outrageous conduct "exceeds 'all bounds usually tolerated by decent society.'"  *Dollard v. Bd. of Educ. of Town of Orange,* 63 Conn. App. 550, 554 (Conn. App. Ct. 2001) (quoting *Petyan v. Ellis,* 200 Conn. 243, 254 n.5 (1986), *superseded by statute on other grounds, Chadha v. Charlotte Hungerford Hosp.,* 272 Conn. 776, 787, 793 n.21 (2005)).  "'Liability [for intentional infliction of emotional distress] has been found only where the conduct has

been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Appleton,* 254 Conn. at 210-11 (citation omitted). Conduct that is "merely insulting or displays bad manners or results in hurt feelings" cannot be extreme and outrageous for the purposes of an intentional infliction of emotional distress claim. *Id.* at 211 (citation omitted).

    None of Jos. A. Bank's conduct here can be said to be extreme and outrageous. Jos. A. Bank had a reasonable basis to believe that Mr. Stefanidis violated company policy on two occasions, that it clearly communicated the consequences of such violations, and disciplined Mr. Stefanidis accordingly. Even if Jos. A. Bank was wrong about whether the underlying conduct occurred or whether such conduct justified its actions, it engaged in "routine employment actions," which cannot sustain an intentional infliction of emotional distress claim unless accompanied by additional egregious conduct. *See Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) ("An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme or outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner.") (citations omitted); *Conge v. Sikorsky Aircraft Corp.*, No. 3:05-cv-1650 (PCD), 2007 WL 4365676, at *10 (D. Conn. Dec. 11, 2007) (granting summary judgment on where plaintiff "made absolutely no showing that [the defendant] treated him outrageously during his employment or termination", even if he was improperly terminated because of his disability); *see also Tomby v. Cmty. Renewal Team, Inc.*, No. 3:09-cv-1596 (CFD), 2010 WL 5174404, at *7 (D. Conn. Dec. 15, 2010) (complaint's allegations that manager harassed and disciplined him, monitored

him closely and warned him about his performance did not state a valid intentional infliction of emotional distress claim).

When Mr. Stefanidis signed the confession admitting that he misused the store shipping codes, Mr. Staines warned him of the possible consequences of this violation, which included termination or demotion.  Def.'s Ex. D, Stefanidis Dep. 78:2-4, ECF No. 37-6.  This conduct, without more, also cannot sustain a claim of intentional infliction of emotional distress.  *See e.g.*, *Emanuele v. Boccaccio & Susanin*, No. CV 90-0379367S, 1992 WL 79823, at *3-4 (Conn. Super Ct. Apr. 10, 1992) (holding alleged conduct not extreme and outrageous where at-will employee alleged that her employer made false accusations regarding her work performance in order to deprive her of benefits and compensation).

The interaction that comes the closest to possible misconduct is Mr. Stefanidis's claim that Ms. Callanan was upset when he told her about his surgery and called him frequently when he was out of work recovering from his tonsillectomy.  However, this behavior is not "extreme and outrageous."  *See Tomby*, 2010 WL 5174404, at *7 (employer's constant monitoring was not extreme and outrageous).  Nor is there evidence of any causal link drawn between Ms. Callanan's alleged actions and Mr. Stefanidis's termination.

Mr. Stefanidis notes that an employer terminating an employee to avoid providing worker's compensation benefits has been found to be extreme and outrageous conduct. Pl.'s Opp. Br. 42, ECF No. 44.  However, there is no evidence that Jos. A. Bank terminated Mr. Stefanidis for this reason and ample evidence indicating that he was

terminated for other reasons.  Accordingly, summary judgment must be granted on Mr. Stefanidis's intentional infliction of emotional distress claim.

### F.   Negligent Infliction of Emotional Distress (Second Count)

Finally, Mr. Stefanidis claims that Jos. A. Bank's conduct can sustain a claim of negligent infliction of emotional distress.  To prevail on such a claim, Mr. Stefanidis must produce evidence that creates a genuine question of material fact on all of the following elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

Connecticut law recognizes a claim for negligent infliction of emotional distress in the employment context only where it is based on "unreasonable conduct of the defendant in the termination process."  *Morris v. Hartford Courant Co.*, 200 Conn. 676, 682 (1986); *Perodeau v. City of Hartford*, 259 Conn. 729, 749, 757 (2002) (holding that a plaintiff cannot sustain a negligent infliction of emotional distress claim in the context of a "continuing employment relationship").  "The mere act of firing an employee, even if wrongfully motivated" will not sustain a negligent infliction of emotional distress claim. *See Parsons v. United Techs. Corp.*, 243 Conn. 66, 88-89 (1997).  Instead, to survive Jos. A. Bank's summary judgment motion, Mr. Stefanidis must show that Jos. A. Bank acted unreasonably in terminating him and that the distress he suffered as a result was "reasonable in light of the defendant['s] conduct."  *Id.*; *Larobina v. McDonald*, 274 Conn. 394, 410 (2005) (internal quotation marks and citation omitted).

Drawing all inferences in Mr. Stefanidis's favor, no reasonable juror could conclude that Jos. A. Bank's conduct created an unreasonable risk of causing him emotional distress.  As noted above, in the context of the intentional infliction of emotional distress claim, Ms. Callanan's conduct is arguably the closest allegation in the record of conduct that could lead to emotional distress.  There is no record evidence linking her conduct to Mr. Stefanidis's termination.  *See generally Mody v. Gen. Elec. Co.*, No. Civ. A. 3-04-CV-358(JC), 2006 WL 1168051, at*4 (D. Conn. Apr. 26, 2006) (holding that the "termination process" does not begin "when an employer and employee first encounter a conflict with each other"); *see also e.g.*, *Michaud v. Farmington Community*, No. CV010806951S, 2002 WL 31415478, at *4 (Conn. Super. Ct. Sept. 25, 2002) (granting summary judgment on a negligent infliction of emotional distress claim where plaintiff failed to show a connection between the claimed offensive act and her termination); *Delise v. Metro-North R.R. Co.*, 646 F. Supp. 2d 288, 293 (D. Conn. 2009) (granting summary judgment where plaintiff produced no evidence "concerning events that occurred during the resignation process or once plaintiff terminated [his] employment") (citation and internal quotation marks omitted).

As noted above, the Court does not believe that Mr. Stefanidis has produced record evidence indicating that the reason for his termination, failing to close the store properly, was false or fabricated.  But even if those reasons were false, his negligent infliction of emotional distress claim would still fail.  Falsely accusing an employee of misconduct can sustain a negligent infliction of emotional distress claim, but not under the circumstances in this case.  *See Battistoni v. Lakeridge Tax Dist.*, No. LLICV075002223S, 2008 WL 2746080, at *4 (Conn. Super. Ct. June 17, 2008) (citation

omitted).  "Cases in which [this] claim is based on allegations of falsity typically include more unreasonable conduct than the false statement itself."  *Tomby*, 2010 WL 5174404, at \*5; *see also generally Parsons*, 243 Conn. at 88-89 (noting that the "wrongful" termination of an employee will not sustain a negligent infliction of emotional distress claim without more).  Summary judgment is appropriate here because Mr. Stefanidis has produced no evidence of any unreasonable conduct, other than his unsupported claim that Jos. A. Bank's reason for terminating him is false.

For all of these reasons, the Court must grant summary judgment on Mr. Stefanidis's negligent infliction of emotional distress claim.

## IV.     CONCLUSION

For all of the foregoing reasons, Jos. A. Bank's Motion for Summary Judgment, ECF No. 37, is **GRANTED**.  The Clerk is directed to enter judgment for Jos. A. Bank and close the case.

SO ORDERED at Bridgeport, Connecticut this 2nd day of March 2016.

  /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE